936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Diana Lynn GRANT, Defendant-Appellant.
 No. 90-1159.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Diana L. Grant appeals her conviction for conspiring to distribute cocaine. For the following reasons, we affirm the conviction.
 
 I.
 
 2
 Diana Grant lived with Larry White for sixteen years. Suspicious that White was dealing heavily in cocaine, the FBI conducted an investigation of him with the use of various recording devices from April 22, 1986 to May 21, 1986. The investigation confirmed that White was dealing in cocaine.
 
 
 3
 On September 30, 1988, a federal grand jury returned a four count indictment against White and several others. Count one charged Larry White, Duncan Pea, Diana Grant, and seven other co-defendants, with conspiracy to distribute multiple-kilograms of cocaine, in violation of 21 U.S.C. Sec. 846. Count two charged Larry White with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. Secs. 846,848. Count three charged Rolando Hernandez with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. Secs. 846,848. Finally, count four charged Michael Pennyman with attempting to possess cocaine with intent to distribute. On February 15, 1989, the court granted the government's motion to consolidate the aforementioned indictment with a separate indictment charging Duncan Pea with being a felon in possession of firearms.
 
 
 4
 On April 6, 1989, during a pre-trial hearing, Grant moved for a severance and mistrial upon learning that her attorney had previously represented one of the government's witnesses. The government did not oppose the motion, and it was granted by the trial court. Grant was then appointed new counsel. Duncan Pea was also granted a mistrial after his wife shot him in the leg. The district court set a new trial date for Grant and Pea to be tried together.
 
 
 5
 Thereafter, the grand jury returned an indictment charging that William Cargo had joined in the conspiracy charged against White, Pea, Grant, and the seven other co-defendants in the September 30 indictment. On July 28, 1989, the government moved to consolidate the indictment against Cargo with the earlier indictments pending against Grant and Pea. Although this motion was opposed by Grant, Pea, and Cargo, it was granted.
 
 
 6
 The consolidated trials began on September 19, 1989, and concluded on October 13, 1989. Following the presentation of the government's case, Grant moved for judgment of acquittal, but the trial court denied the motion. After she presented her defense, Grant renewed her motion for judgment of acquittal, again the motion was denied. The jury found Grant, Pea and Cargo guilty of conspiracy, but found Pea not guilty of being a felon in possession of firearms. This timely appeal followed.
 
 
 7
 The issues raised on appeal are: (1) whether the trial court erred in denying Grant's motion for judgment of acquittal; (2) whether the trial court erred in ruling that a taped conversation offered by Grant was inadmissible; and (3) whether the trial court abused its discretion in consolidating the trials.
 
 II.
 
 8
 The first issue is whether the trial court erred in denying Grant's motion for judgment of acquittal at the close of the government's case. Grant argued before the trial court that the evidence was insufficient to prove that she had conspired to distribute cocaine.
 
 
 9
 In addressing the sufficiency of the evidence, this court does not sit as a trier of fact in a de novo trial. Rather, the standard of review for claims of insufficient evidence is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 10
 Grant was convicted of conspiracy to distribute cocaine. To obtain a conviction for conspiracy under 21 U.S.C. Sec. 846, the government must prove the existence of an agreement to violate the drug laws, that each conspirator knew of and intended to join the conspiracy and that each conspirator participated in the conspiracy. United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied sub nom. Thorpe v. United States, 111 S.Ct. 978 (1991). It is not necessary to prove the commission of an overt act. United States v. Dempsey, 733 F.2d 392, 396 (6th Cir.), cert. denied, 469 U.S. 983 (1984).
 
 
 11
 Grant and White lived together for over thirteen years. During this time, Grant was addicted to cocaine, which eventually led to her receiving treatment for drug abuse. Grant acknowledges that she was aware of White's dealings in cocaine. Hence, she knew of the conspiracy to distribute cocaine. Grant, however, maintains that she did not participate in the conspiracy to distribute of cocaine.
 
 
 12
 It is clear that " '[p]articipation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances.' " United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986) (citation omitted). Moreover, " '[e]very member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement.' " Id. (citation omitted). Finally, " '[t]he connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.' " Id. (citation omitted). Applying these legal principles to the present case leads us to conclude that a reasonable jury could have found beyond a reasonable doubt that Grant knowingly joined in and participated in a conspiracy to distribute cocaine.
 
 
 13
 There was testimony at trial showing that Grant acted as a conduit on many occasions for the delivery of cocaine and for receiving money in payment. There was also testimony that Grant had flown to Miami on three occasions involving cocaine transactions. Finally, tape recordings of conservations between Grant and several co-conspirators, introduced as evidence, revealed discussions concerning the arrangement of cocaine shipments and distribution. We conclude that the evidence presented at trial was such that a reasonable jury could have found beyond a reasonable doubt that Grant knowingly joined and participated in the conspiracy to distribute cocaine.
 
 III.
 
 14
 The next issue is whether the trial court erred in ruling that a taped conversation offered by Grant was inadmissible. During the presentation of Grant's defense, defense counsel offered into evidence, exhibit four, a tape recording of a conversation between Grant and an unidentified woman. The defense counsel characterized the tape as a conversation in which Grant discussed her situation, her personal life, and her use of narcotics. He argued below that "[t]he conversation shows ... that my client and [White] ... were basically going their separate ways." J.App. at 104. Defense counsel offered the tape for state of mind and for the truth of the matter asserted. Id. at 105. The government objected to the tape being played before the jury, contending that the conversation was both irrelevant and hearsay. The trial judge stated that he wished to hear the tape before ruling.
 
 
 15
 The following day, the judge stated that he had listened to the tape and that
 
 
 16
 Unless you can tell me something that's on the tape that either impeaches somebody or is exculpatory, I don't see where any of the conversation on the tape is relevant. As I listened to the tape, the tape for the most part consists of ... Defendant complaining of her circumstances and describing her personal situation. I found nothing in it that was arguably relevant.... It's all hearsay.
 
 
 17
 Id. at 215-16. Defense counsel then argued that
 
 
 18
 it's clear from the tape that she's not dealing with, or doing anything with Larry White. She's trying to better her education and stay away from the drugs in terms of her own use. Her complaints to her friend on the telephone are that she's basically just being treated as a cook, a maid, has nothing to do.
 
 
 19
 Id. at 216. He went on to argue that the tape was admissible as a hearsay exception under Federal Rules of Evidence 804. Id. at 217. The court concluded that the tape was both hearsay and irrelevant.
 
 
 20
 In his brief on appeal, Grant does not argue that the statement was not hearsay. Instead, Grant contends that, although hearsay, the tape was admissible under rule 804(b)(5) of the Federal Rules of Evidence as an exception to the hearsay rule. At oral argument, however, Grant's counsel asserted that the tape was also proffered for state of mind.
 
 Rule 804(b)(5) provides in part:
 
 21
 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, [is not excluded by the hearsay rule] if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it[.]
 
 
 22
 In order for 804(b)(5) to apply, the declarant must be unavailable. See Fed.R.Evid. 804(b). Grant argues that as the declarant she was unavailable because she had invoked her fifth amendment privilege.
 
 
 23
 First, the government contends that Grant's claim of unavailability, due to her asserting the fifth amendment privilege, is "absurd." Contrary to the government's position, however, when a trial judge rules that a defendant has properly invoked the fifth amendment's privilege against self-incrimination, the defendant is rendered unavailable for purposes of rule 804. United States v. Boyce, 849 F.2d 833, 836 (3d Cir.1988); United States v. Salvador, 820 F.2d 558, 560 (2d Cir.), cert. denied, 484 U.S. 966 (1987); United States v. Woolbright, 831 F.2d 1390, 1395 (8th Cir.1987); United States v. Toney, 599 F.2d 787, 789-90 (6th Cir.1979).
 
 
 24
 As noted earlier, the transcript reveals that the tape was offered for Grant's state of mind and for the truth of the matter asserted. The transcript indicates to us that the trial court understood the difference in whether the tape was offered as state of mind or as the truth of the matter asserted. See J.App. at 106 ("Then we will tell the jury it's not offered for the truth of what she is saying, but to show her statement of mind, to show the absence of any criminal intent."). If offered for the truth of the matter asserted, the tape must fall within a hearsay exception. If offered for state of mind, however, the tape conversation would not be excluded by the hearsay rule. Fed.R.Evid. 803(3). Understanding this difference, the trial court concluded, after hearing the tape, that nothing on the tape was exculpatory nor could it be used for impeachment.
 
 
 25
 Alleged evidentiary errors are reviewed for abuse of discretion. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied sub nom. Black v. United States, 111 S.Ct. 974 (1991). After reviewing the entire twenty minute conversation in question, we conclude that the trial court did not abuse its discretion in finding the tape inadmissible as irrelevant hearsay. The tape conversation involved common, everyday dialogue and covered topics ranging from weight gain to house-keeping. As such, the trial court was within its discretion in declaring the tape irrelevant. As the trial court found, the tape was not exculpatory nor could it have been used for impeachment purposes. Moreover, with respect to 804(b)(5), we are not persuaded that the tape conversation was more probative on the point for which it was offered than any other evidence which the proponent could have procured through reasonable efforts.
 
 
 26
 Even assuming that the tape was relevant regarding Grant's state of mind, we find the trial court's failure to admit the common, everyday conversation harmless.
 
 IV.
 
 27
 The final issue on appeal is whether the trial court erred in consolidating Grant's trial with the trial of co-defendant Duncan Pea. We think not.
 
 
 28
 Grant argues that the government's motion to consolidate the trials should have been denied because she submitted an affidavit stating that she would testify on behalf of Pea, and Pea submitted an affidavit stating that he would testify on Grant's behalf. According to Grant, she and Pea would testify to one another's lack of involvement in the crimes charged. Their failure to so testify, Grant argues, prejudiced their chances of acquittal.
 
 
 29
 Pea did not filed an affidavit offering to testify on Grant's behalf. Neither did Grant file an affidavit offering to testify on Pea's behalf. Instead, Pea and Grant signed affidavits stating that they would testify as witnesses for co-defendant Cargo. J.App. at 42-45. These affidavits were filed by Cargo in his opposition to the government's motion to consolidate.
 
 
 30
 The affidavits submitted by Pea and Grant were to the benefit of Cargo. J.App. at 33. Nothing in the record supports Grant's claim that she and Pea intended to testify on one another's behalf. Hence, if anyone can challenge the grant of the government's motion on the basis of the affidavits, it is Cargo, not Grant. Moreover, the trial court found the affidavits non-exculpatory. Id. at 33-34.
 
 
 31
 Thus, Grant has not provided the court any grounds to support its attack of the trial judge's decision to consolidate the trial of Grant with the trial of Pea. A decision to consolidate trials will not be disturbed on review unless the district court abused its discretion. See United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied sub nom. Graewe v. United States, 474 U.S. 1068 (1986); Lyle v. Koehler, 720 F.2d 426, 436 n. 1 (6th Cir.1983) (Porter, J., concurring in part and dissenting in part). "To show abuse of discretion in this respect, a defendant must make a strong showing of prejudice." Gallo, 763 F.2d at 1525; see also Lyle, 720 F2d at 436 n. 1. This Grant has not done. The trial judge weighed the factors for and against consolidation, and determined that consolidation was proper. We find no abuse of discretion.
 
 V.
 
 32
 For the foregoing reasons, we AFFIRM the conviction.