68 F.3d 475
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant.
v.
Clodoveo HUGHES, Defendant-Appellant.
 No. 94-2320.
 United States Court of Appeals, Sixth Circuit.
 Oct. 10, 1995.
 
 Before: WELLFORD, MILBURN and SUHRHEINRICH, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Clodoveo Hughes appeals his convictions and sentences for possession of marijuana with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and conspiracy to possess with the intent to distribute marijuana, in violation of 21 U.S.C. Sec. 846. On appeal, the issues are (1) whether defendant waived any challenge to the sufficiency of the evidence supporting his conviction on count one, possession of marijuana with intent to distribute, where he failed to move for a judgment of acquittal at trial pursuant to Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 29; (2) whether there was sufficient evidence to sustain defendant's conviction on count two, conspiracy to possess marijuana with intent to distribute; (3) whether the district court's questioning of one witness constitutes plain error that deprived defendant of a fair trial and requires reversal of either count of conviction; and (4) whether the district court's findings of fact as to the quantity of marijuana involved for purposes of count two pursuant to U.S.S.G. Sec. 2D1.1 were clearly erroneous. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On May 5, 1994, a grand jury issued a three-count superseding indictment against defendant Clodoveo Hughes. Count one charged defendant with possession of marijuana with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Count two charged defendant with conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. Sec. 846. Count three charged defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. Sec. 922(g)(1). Because count three was severed and tried separately from counts one and two, it is not part of this appeal.
 
 
 3
 A jury trial on counts one and two commenced on June 13, 1994. On June 16, 1994, the jury returned guilty verdicts on both counts. At the sentencing hearing held on November 7, 1994, the district court sentenced defendant to 120 months imprisonment followed by eight years supervised release and a $100 mandatory special assessment. This timely appeal followed.
 
 B.
 
 4
 The facts relating to each of the issues involved in this appeal are discrete and somewhat detailed. Accordingly, the relevant facts are recited below as they relate to the court's discussion of each issue.
 
 II.
 A.
 
 5
 Defendant argues that there was not sufficient evidence to sustain his conviction on count one, possession of marijuana with the intent to distribute. The government argues that defendant waived any challenge to the sufficiency of the evidence supporting his conviction on count one because he failed to move at trial for a judgment of acquittal on count one pursuant to Fed.R.Crim.P. 29.
 
 
 6
 "In order to appeal a conviction based on sufficiency of the evidence, a defendant must move for judgment of acquittal during trial or within seven days after the jury is discharged pursuant to Fed.R.Crim.P. 29." United States v. Horry, 49 F.3d 1178, 1179 (6th Cir.1995). Absent a manifest miscarriage of justice, a defendant's failure to move for a judgment of acquittal on a particular count constitutes a waiver of his right to challenge the sufficiency of the evidence on that count. Id.; United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989). In this case, defendant made an oral motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. However, he limited his Rule 29 motion to count two, conspiracy to possess with the intent to distribute marijuana; he did not include count one, possession of marijuana with the intent to distribute. Accordingly, because defendant has not demonstrated a manifest miscarriage of justice, we are barred from considering defendant's challenge to the sufficiency of the evidence on count one.
 
 B.
 
 7
 Defendant also argues that there was not sufficient evidence to sustain his conviction on count two, conspiracy to possess marijuana with intent to distribute. He claims that the government has shown nothing more than that he was an aider and abetter to the conspiracy.
 
 
 8
 "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)), cert. denied, 476 U.S. 1123 (1986). "In addressing sufficiency of the evidence questions, this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." United States v. Ferguson, 23 F.3d 135, 140 (6th Cir.), cert. denied, 115 S.Ct. 259 (1994). Instead, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[W]e will reverse a judgment for insufficiency of evidence only if ... the judgment is not supported by substantial and competent evidence." United States v. Blakeney, 942 F.2d 1001, 1010 (6th Cir.), cert. denied, 502 U.S. 1008 (1991), and cert. denied, 502 U.S. 1035 (1992).
 
 
 9
 "In drug conspiracy cases pursuant to 21 U.S.C. Sec. 846, the government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). Once the government proves that a conspiracy existed, " '[t]he connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.' " Christian, 786 F.2d at 211 (quoting United States v. Batimana, 623 F.2d 1366, 1368 (9th Cir.), cert. denied, 449 U.S. 1038 (1980)); see also United States v. DeFranco, 30 F.3d 664, 668 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994). "It is only necessary that a defendant know of the object of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance." United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989).
 
 
 10
 In this case, both the existence of the conspiracy and defendant's connection with it are established primarily by the testimony of James McFarland. Defendant concedes that McFarland was involved in a conspiracy with George Garza, but he disputes his association with it. According to the testimony of McFarland, defendant introduced McFarland to Garza in early 1993, some three months before the conspiracy began. In March 1993, Garza first asked McFarland to make a trip to Texas and Mexico to pick up a load of marijuana and drive it back to Michigan. McFarland also delivered a bundle of money given to him by defendant to Garza. Defendant provided McFarland with travel expense money for this trip, for which he had to account to Garza.
 
 
 11
 McFarland also testified that he successfully drove three or four loads of marijuana to Michigan. He stated that he always took the car with the marijuana in it to Pullman, Michigan, where he unloaded the marijuana in the presence of Garza, defendant, and several others. On one occasion, McFarland helped Garza and defendant weigh the marijuana after it was unloaded. During at least three of the successful trips McFarland made to drive marijuana from Texas to Michigan, he delivered bundles of money given to him by defendant to Garza on his way to Texas. McFarland also made three trips to Texas just to deliver to Garza bundles of money given to him by defendant. Garza paid for McFarland's expenses on these money delivery trips.
 
 
 12
 On McFarland's final marijuana trip in November 1993, he pretended to be broken down in Michigan. He called Garza, and Garza told him not to leave the car and that he would take care of it. Shortly thereafter, defendant called McFarland at the number McFarland had given to Garza and then came to assist McFarland. When defendant arrived, McFarland told defendant that there was marijuana in the car. Defendant asked McFarland, "Can't we just leave it [the car] here?" McFarland responded, "I don't know. [Garza] said not to leave it there 'cause the [marijuana's] in there. You know." Defendant stated, "But it's stashed, ain't it?" McFarland said, "Yeah." Knowing that the car contained a load of marijuana, defendant assisted McFarland in calling a wrecker, paid part of the bill for the wrecker service, and advised McFarland where to take the car. In addition, Trooper Lane Booms testified that his drug-sniffing dog alerted to three duffel bags found on defendant's property during the execution of a search warrant later on the same day that defendant met and assisted McFarland with the car which was being used to transport the marijuana. Viewing this evidence in the light most favorable to the government, we believe that a rational trier of fact could have found beyond a reasonable doubt that a conspiracy existed, that defendant knew of the conspiracy and its object, that he associated himself with it, and that he knowingly contributed his efforts in its furtherance.
 
 
 13
 Defendant cites United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991), for the proposition that there must be additional evidence which establishes that the defendant actually entered into an agreement to achieve the conspiracy's common goals. Although we acknowledge that rule, we conclude that it is inapplicable here because Giunta is factually distinguishable on two grounds. First, the evidence establishing the intentions and purposes of the defendant, Giunta, and the alleged co-conspirator, Fedino, was speculative at best. Id. at 765. Second, the person who was in the best position "to assess what Fedino and Giunta were up to" gave testimony which "completely undercuts the existence of the agreement specifically charged to Giunta and Fedino." Id. at 768.
 
 
 14
 Defendant also argues that United States v. Orozco-Prada, 732 F.2d 1076, 1080 (2d Cir.), cert. denied, 469 U.S. 845 (1984); United States v. Dela Espriella, 781 F.2d 1432, 1436 (9th Cir.1986), and United States v. Todd, 920 F.2d 399, 406 (6th Cir.1990), establish that laundering money for a drug conspiracy does not make one a member of that conspiracy unless there is evidence of an agreement by the money launderer to join the underlying conspiracy. That rule, however, is inapposite because defendant did more than simply handle money in this case. For example, defendant was significantly involved in assisting McFarland when McFarland pretended to broken down. In addition, it could be inferred that defendant helped transport marijuana because the three duffle bags found on defendant's property contained the scent of drugs.
 
 
 15
 In defendant's reply brief, he makes much of the fact that many of the facts that the government cites in support of defendant's involvement in the conspiracy are equivocal. However, this argument is unavailing because, in considering the sufficiency of the evidence, we are required to view the evidence in the light most favorable to the government. Therefore, we reject defendant's sufficiency of the evidence claim.
 
 C.
 
 16
 Defendant argues that reversal of his convictions is required because the district court's questioning of a witness constitutes plain error in that it deprived him of a fair trial. The government argues that reversal is inappropriate because there is no demonstrated error that affected defendant's substantial rights or affected the outcome of the trial.
 
 
 17
 In this case, defendant did not object at trial to the questioning by the district court. Consequently, we review defendant's claim only for plain error pursuant to Fed.R.Crim.P. 52(b). See United States v. Thomas, 11 F.3d 620, 629 (6th Cir.1993), cert. denied, 114 S.Ct. 1570, and cert. denied, 114 S.Ct. 1571 (1994); United States v. Seago, 930 F.2d 482, 493 (6th Cir.1991). Under Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b); Thomas, 11 F.3d at 629. Rule 52(b) gives us only limited power to correct errors in a criminal proceeding that were not timely raised in the district court. United States v. Olano, 113 S.Ct. 1770, 1776 (1993). The Supreme Court has recently interpreted Rule 52(b) as imposing three requirements: (1) there must be an error; (2) the error must be plain, that is, clear or obvious; and (3) the plain error must affect substantial rights, which usually means that it is prejudicial because it affected the outcome of the district court proceedings. Id. at 1777-78; United States v. Odom, 13 F.3d 949, 956 (6th Cir.), cert. denied 115 S.Ct. 116 (1994). Thomas, 11 F.3d at 629-30. The defendant bears the burden of persuasion with respect to the third requirement. Olano, 113 S.Ct. at 1778.
 
 
 18
 With regard to the role of the district court in a jury trial, this court stated:
 
 
 19
 "The trial judge in the federal court is more than a mere arbitrator to rule upon objections and to instruct the jury. It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. It is his duty to see that the issues are not obscured and that the testimony is not misunderstood. He has the right to interrogate witnesses for this purpose."
 
 
 20
 United States v. Carabbia, 381 F.2d 133, 139 (6th Cir.) (quoting Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir.), cert. denied, 352 U.S. 892 (1956)), cert. denied, 389 U.S. 1007 (1967). We have recently elaborated on a trial judge's role:
 
 
 21
 A district judge's interjection into a trial is "common and proper when there is a need for clarification in a lengthy or complex trial, when the witness proffers incredible testimony that is not adequately probed by counsel, or when the witness has become confused." United States v. Seago, 930 F.2d 482, 492 (6th Cir.1991). Moreover, a trial judge "may analyze the evidence, comment upon it, and express his [or her] views with regard to the trial testimony of the witnesses." Id. (quoting United States v. Murdock, 290 U.S. 389, 391 (1933), overruled on other grounds, Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 77 (1964)).
 
 
 22
 United States v. Glover, 21 F.3d 133, 137 (6th Cir.) (parallel citations omitted), cert. denied, 115 S.Ct. 360 (1994). However, a district judge must be careful not to take the role of an advocate or to give the jury the impression that he has done so. United States v. Van Dyke, 14 F.3d 415, 420 (8th Cir.1994).
 
 
 23
 In this case, defendant calls our attention to three specific instances of judicial intervention which he argues require reversal of his conviction. The first instance complained of occurred when Mariano Hughes was testifying on direct examination about his plea agreement with the State of Michigan. Mariano's testimony indicated that he may not have understood the plea agreement and that he pleaded guilty to a crime he did not commit because his attorney told him to do so. The following dialogue took place between the district judge and Mariano:
 
 
 24
 THE COURT: That is, you are telling me a sad story, and I unfortunately believe you. So in order to get out of going to the federal court or having a trial in the state court, you told the judge that you committed a crime that you didn't commit. That is true, isn't it?
 
 
 25
 THE WITNESS: Yes.
 
 
 26
 THE COURT: You told him that you understood the plea agreement that you didn't understand. That is true, too, isn't it?
 
 
 27
 THE WITNESS: Yes.
 
 
 28
 THE COURT: Pretty sad story about American justice that you are telling us right now, but it is a story that, I repeat, I believe you. I believe you.
 
 
 29
 J.A. 108-09. The district judge concluded by saying:
 
 
 30
 Well it is a sad story. Go ahead and ask the witness what you want. The man pled guilty to a crime that he says he didn't commit, signed a plea agreement that he didn't read, didn't understand, and went to jail. Do you what you want with him.
 
 
 31
 J.A. 111.
 
 
 32
 Defendant argues that the district court's statements tainted the jury because they repeatedly expressed the district court's opinion about Mariano's reliability. Defendant states that the jury easily could have concluded that Mariano's truthfulness about one subject indicated that he was being truthful about other subjects as well. Although such a taint is plausible, considering the entire testimony of Mariano, we do not believe that it occurred in this case because Mariano gave further testimony that was contrary to his responses to the district judge's questions. First, Mariano later testified that the plea agreement was explained to him by his attorney and that he told both the state court and his attorney that he understood the plea agreement. Moreover, Mariano gave testimony indicating that he did commit the acts to which he pleaded guilty in the state court, despite his earlier testimony that he pleaded guilty only because his attorney told him to do so, not because he was guilty. Therefore, we do not believe that this instance of judicial intervention was so prejudicial that it affected the outcome of defendant's trial.
 
 
 33
 The second instance complained of occurred during the cross-examination of Mariano. Defendant argues that the district court assumed the role of the prosecutor by taking control of the cross-examination on what he characterizes as an extremely critical point. Defendant states that his attorney was attempting to create a reasonable doubt on one of the essential elements of the crime by pointing out that Mariano had told a number of different versions about whether he gave any marijuana to defendant. The government argues that the point of contention was not whether marijuana was given to defendant but whether the marijuana was located in Mariano's barn or Neal Sutton's house. Based upon our review of the transcript, we agree with the government's position.
 
 
 34
 Mariano testified that an FBI agent threatened him with federal criminal charges if he did not testify according to what was in his statement to the federal government. Mariano testified that the FBI agent stated that Mariano had told the government (1) that he had stored the marijuana in his barn and (2) that he had given the marijuana to defendant. Defendant insisted that that was not correct because the marijuana was stored at Sutton's house. In an attempt to clarify that point, the district judge interjected:
 
 
 35
 THE COURT: What is the truth? What you said then or what you are saying now? I don't care--
 
 
 36
 THE WITNESS: Oh, well, what I am saying now. I told Rene that I was going to--
 
 
 37
 THE COURT: What is the truth?
 
 
 38
 THE WITNESS: That I did give it to him?
 
 
 39
 THE COURT: That you did give it to him?
 
 
 40
 THE WITNESS: Yes.
 
 
 41
 J.A. 129. Defendant's counsel then continued with his cross-examination of Mariano:
 
 
 42
 Q. That is the truth?
 
 
 43
 A. Yes, not the way that I said that he [the FBI agent] was saying, that I had stored in my barn and I did give it to him, because when they brought it over, I didn't want it there, and I took everything out, and everything out, and a few days later Frank had told me that, that this guy was going to pick it up, but to leave just the box there. I don't know if it was 10, 15 pounds, what.
 
 
 44
 J.A. 129. Thus, it becomes clear that, as the government argues, the confusion was over whether the marijuana was located in Mariano's barn or Neal Sutton's house, not whether marijuana was given to defendant. Accordingly, we are not convinced that this instance of judicial intervention had any effect on defendant's attempt to create a reasonable doubt on an essential element, and we do not believe it had any affect on the outcome of defendant's trial.
 
 
 45
 The third instance complained of relates closely to the second instance. As Mariano continued his testimony, the district judge made the following comment:
 
 
 46
 THE COURT: I will tell you that I am still confused. It is up to you whether you want to ask him. I am confused whether or not he said that I gave the 20 pounds or 10 pounds to his brother or whether he left 20 pounds at Neal's house. I don't know what the answer is.
 
 
 47
 MR. PHELAN: You want me to ask him?
 
 
 48
 THE COURT: You can or I will.
 
 
 49
 MR. PHELAN: (Laughs.) I am not so sure that I want to ask him.
 
 
 50
 THE COURT: Then don't.
 
 
 51
 J.A. 130. The next day during the re-direct examination of Mariano, the prosecutor asked Mariano whether he had in fact given marijuana to defendant. Mariano answered, "Yes." J.A. 142. The district judge then interjected, and the following colloquy took place:
 
 
 52
 THE COURT: And you did that by going back to the farm and picking up the 20 pounds and giving it to him.
 
 
 53
 THE WITNESS: I went back to Dale Sutton's where I had left it.
 
 
 54
 THE COURT: I said the farm. I am sorry. Your coworker?
 
 
 55
 THE WITNESS: Yes.
 
 
 56
 THE COURT: You went and picked up the 20 pounds and brought it back to your brother?
 
 
 57
 THE WITNESS: Yes.
 
 
 58
 THE COURT: And then at your property you give it to your brother?
 
 
 59
 * * *
 
 
 60
 THE WITNESS: Yes.
 
 
 61
 J.A. 143. Defendant argues that this intervention deprived him of fair trial because it deprived him of the entire reasonable doubt issue regarding the conflicting versions told by Mariano. However, defendant has again failed to convince us that this instance had any affect on either his attempt to create a reasonable doubt or the outcome of his trial.
 
 
 62
 This court generally does not look with favor on extensive intervention during the examination of witnesses by the district court in a jury trial. However, we do not find it necessary to comment on the propriety of the interventions in this case. We conclude only that the district court's questioning of Mariano in this case did not rise to the level of plain error.
 
 D.
 
 63
 Finally, defendant argues that the district court committed clear error in determining that more than 100 kilograms of marijuana were involved in his offense behavior for sentencing purposes. The government argues that the district court's findings are adequately supported by the record and should be upheld.
 
 
 64
 The standard for reviewing a district court's findings with regard to the quantity of drugs for which a defendant is to be held responsible at sentencing is well established:
 
 
 65
 The amount of drugs chargeable to a defendant is a question of fact reviewable by this court under the clearly erroneous standard. The United States bears the burden of proving the quantity of drugs chargeable to a defendant, but only by preponderance of the evidence. When a district court finds itself unable to determine exact drug quantities, it may make a reasonable estimate of quantity, provided that estimate is supported by a preponderance of the evidence.
 
 
 66
 United States v. Clemons, 999 F.2d 154, 156 (6th Cir.1993) (citations omitted), cert. denied, 114 S.Ct. 704 (1994); accord United States v. Baro, 15 F.3d 563, 569 (6th Cir.), cert. denied, 115 S.Ct. 285 (1994); United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906, and cert. denied, 498 U.S. 989, and cert. denied, 498 U.S. 990 (1990).
 
 
 67
 The probation department prepared a presentence investigation report in this case. It concluded that defendant was responsible for 279 pounds of marijuana for both counts, which corresponded to a base offense level of 26. Based on a total offense level of 26 and criminal history category of III, the guideline range was 78-97 months imprisonment. The presentence investigation report also stated that defendant was subject to a 10 year statutory minimum sentence for count two based on his prior felony drug conviction.
 
 
 68
 The primary factual dispute at the time of sentencing was the issue of marijuana quantity pursuant to U.S.S.G. Sec. 2D1.1 as to count two. The government argued that James McFarland had testified as to a total of six marijuana trips and that the total quantity of all six loads of marijuana could be determined from the actual weight of the marijuana seized for the first and last loads and the amount of money paid to McFarland for the four successful, intervening loads. Defendant challenged the quantities computed in the presentence investigation report and argued that he should be held responsible for less than 100 kilograms of marijuana.
 
 
 69
 In making its determination of the quantity of marijuana involved, the district court stated that it was aware that it "must review the evidence conservatively." J.A. 282. It then proceeded to read for the record U.S.S.G. Sec. 1B1.3(a)(1)(A) and (B) and application notes 1 and 2. The district court determined that defendant was responsible for 20 pounds of marijuana on count one. With respect to count two, the district court concluded that defendant was responsible for five loads, including the first load, the last load, and three intervening loads. The total weight of the marijuana for these five loads was 265 pounds. The district court reasoned as follows: The first load consisted of 39 pounds of marijuana seized from McFarland in Arkansas while he was on his way to Michigan. Defendant was responsible for this load because he was part of the conspiracy and because he had given McFarland travel expense money for the trip. The last load consisted of 60 pounds of marijuana seized from McFarland in Illinois while he was on his way to Michigan. Defendant was responsible for this load because, when McFarland pretended to be broken down, defendant became directly involved by assisting McFarland in calling a wrecker, paying for the wrecker service to repair the car, and advising McFarland where to take the car, all with the knowledge that the car contained a load of marijuana. With respect to the intervening loads, the district court held defendant responsible for only three loads, and it computed the weight of each load by dividing the total money paid to McFarland for delivering the load by the $50 cost per pound. The district court determined that one load weighed 46 pounds based on the $2300 McFarland was paid on that occasion. It computed the weight attributable to the other two loads as 40 pounds each because McFarland was paid $2000 on each of those occasions. Relying on those computations, the district court found that the total amount of marijuana attributable to defendant for purposes of count two was 225 pounds (39 pounds + 60 pounds + 46 pounds + 40 pounds + 40 pounds). Because 225 pounds is more than 100 kilograms, the district court imposed the 10 year statutory minimum sentence for count two based on defendant's prior felony drug conviction.
 
 
 70
 Defendant argues that the district court made three specific errors in determining that he was responsible for more than 100 kilograms of marijuana. First, defendant argues that defendant did not have knowledge of the actual amount of marijuana involved in the last 60 pound shipment and that the district court erred by failing to conduct a foreseeability analysis as to that shipment. A defendant is responsible for all quantities of drugs with which he is directly involved, regardless of his knowledge of the actual quantity. United States v. Ledezma, 26 F.3d 636, 646 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994); see also U.S.S.G. Sec. 1B1.3(a)(1)(B). Moreover, the foreseeability requirement does not apply to conduct with which the defendant was directly involved. United States v. Cochran, 14 F.3d 1128, 1132 (6th Cir.1994); see also U.S.S.G. Sec. 1B1.3 commentary (application note 2). In this case, defendant was directly involved with the 60 pound shipment because he knew that the car contained marijuana, yet he assisted McFarland in obtaining a wrecker, paying part of the bill for the wrecker service, and advising McFarland where to take the car. Therefore, defendant's argument is rejected because he is responsible for the entire 60 pounds of marijuana even though he did not know or was not able to foresee that the car contained that specific quantity.
 
 
 71
 Second, defendant claims that the 20 pounds of marijuana attributable to count one is unreliable because there was no evidentiary support for the 20 pound figure. He also suggests that the district court erroneously included this amount in determining that the weight of marijuana attributable to count two exceeded 100 kilograms. Defendant refers to the testimony of Mariano Hughes, wherein the district court instructed the jury to ignore any references to a weight of 20 pounds that it made in its questions to the witness because the witness had already indicated that he was not aware of the weight of marijuana. However, the unrebutted testimony of Francisco Rodriguez established that the quantity of marijuana involved was 20 pounds. In addition, the 20 pound figure was not, as defendant suggests, included in determining that the weight of marijuana attributable to count two exceeded 100 kilograms. The 20 pounds was included only for purposes of determining the weight of marijuana involved in count one. Thus, this argument is without merit.
 
 
 72
 Third, defendant asserts that the district court's determination of the weight of marijuana in the successful loads, which was computed by dividing the total money paid to McFarland by the cost per pound, is unreliable because McFarland did not indicate whether the amounts he was paid included expenses. When McFarland testified about what he was paid to deliver the marijuana, he stated that he was paid $50 per pound and that he was paid $2300 on one occasion and $2000 on several other occasions. Although McFarland did not specify whether the $2000 and $2300 amounts included expenses, we believe there is adequate evidence in the record to support the district court's conclusion that these amounts were exclusive of expenses. McFarland testified that he expected to be paid $2000 for the first load of marijuana, which he believed was 40 pounds. The record indicates that this $2000 amount was exclusive of expenses because McFarland was advanced expense money by defendant for this load. Although McFarland was not advanced expense money for the intervening loads, there is nothing to suggest that the amounts he stated he was paid included expenses. In fact, McFarland stated that he had to account for his expenses. Because the amount McFarland stated he expected to be paid for the first load was net of expenses, it could be inferred that the amounts McFarland stated he was paid for the intervening loads would also be net of expenses. Accordingly, we hold that there is adequate evidence in the record to support the district court's computation of the weight of the marijuana involved in the intervening loads by dividing the total money paid to McFarland by the cost per pound, and we do not believe that the district court committed clear error by using such a methodology in making its findings.
 
 
 73
 Accordingly, the district court's underlying factual findings or resulting totals are not clearly erroneous. Therefore, we conclude that the district court was correct in determining that more than 100 kilograms of marijuana was involved for purposes of count two.
 
 III.
 
 74
 For the reasons stated, the judgment of the district court is AFFIRMED.