865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus Enrique MUNOZ (87-2137), Paul Bailey (88-1009), Harout
Aydinian (88-1095), Defendants-Appellants.
 Nos. 87-2137, 88-1009 and 88-1095.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1989.
 
 Before KEITH, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants, Harout Aydinian, Paul Bailey and Jesus Munoz, appeal their convictions following a jury trial of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. Defendant, Jesus Munoz, also appeals his jury conviction for engaging in a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848. For the reasons discussed below, we AFFIRM.
 
 I.
 
 2
 In 1982, the paths of these defendants crossed with the assistance of an elaborate and extensive network of cocaine distributors in Flint, Michigan and a Florida based contact and supplier.
 
 
 3
 The common thread linking all three defendants was Mark Johnson. Mark Johnson organized and operated a cocaine distribution ring in Flint, Michigan. In 1979, Johnson was introduced to a cocaine contact in Florida, Daulys Chico-Polo ("Chico-Polo"). Johnson regularly brought kilograms of cocaine from Chico-Polo that he then distributed through his Flint network. In 1982, Chico-Polo introduced other Flint dealers, James Rizik and George Moorhatch, to his supplier, defendant Jesus Enrique Munoz ("Munoz"). Later that year, Chico-Polo introduced Munoz to Johnson. At that time Munoz sold Johnson two kilograms of cocaine, one of which was sold on consignment. Chico-Polo was paid $2000 for his services as middleman. For the next four years, until he went to prison, Johnson purchased approximately one kilo of cocaine per month from Munoz. Eventually, Johnson and Munoz dealt directly, eliminating Chico-Polo's commission. Johnson made arrangements with Munoz to purchase cocaine "on account" and, in fact, at one time he was in debt to Munoz for as much as $80,000.
 
 
 4
 Defendant, Harout Aydinian ("Aydinian"), met Mark Johnson in 1982 when he was introduced to cocaine. Aydinian was a jeweler in Flint. Soon Johnson and his friends became Aydinian's customers. In 1983, Aydinian and Johnson had a disagreement regarding a $15,000 diamond ring. Realizing that he would never get his money, Aydinian decided to tell the FBI about Johnson's cocaine network. On several occasions, Aydinian provided the FBI with information regarding the Johnson operation; however, he was never authorized or asked to purchase cocaine. Although Aydinian occasionally used cocaine after meeting Johnson, he did not admit to buying cocaine from Johnson until after he was indicted.
 
 
 5
 Defendant, Paul Bailey ("Bailey"), owned the Treasure Chest Lounge and a paint factory in Flint. According to witnesses' trial testimony, the Treasure Chest was a known "stop and cop," a place where cocaine could be purchased from the waitresses or from Bailey directly. Other witnesses testified that Bailey often gave them cocaine or they used cocaine with him. Johnson testified that he sold Bailey an ounce of cocaine per week. Johnson also explained that Bailey often "re-rocked" his cocaine at the paint factory; and that Bailey had offered to sell cocaine "washing" solvents, manufactured at his paint factory, to Johnson's Columbian suppliers.
 
 
 6
 A federal grand jury returned a seven-count indictment against Munoz, Aydinian, Bailey, Johnson and six of Johnson's distributors, on May 21, 1987. Johnson and the others pled guilty to the conspiracy and the continuing criminal enterprise ("CCE") charges while the remaining three defendants filed timely appeals.
 
 II. MUNOZ
 
 7
 After the government presented its case against him, Munoz moved for acquittal. On appeal, Munoz argues that the district court erred by denying that motion. In his motion, filed pursuant to FED.R.CRIM.P. 29,[1] Munoz argued that the government failed to prove all of the elements of the CCE charge, principally that he organized, managed or supervised five or more persons. Moreover, Munoz contends, that the jury did not have enough information to find him guilty.
 
 This court has previously held that:
 
 8
 a trial judge confronted with a Rule 29 motion must consider all of the evidence in a light most favorable to the government and grant the motion when it appears to the Court that the evidence is insufficient to sustain a conviction. The inference which can reasonably be drawn from the evidence, even if the evidence is circumstantial.
 
 
 9
 United States v. Adamo, 742 F.2d 927, 932 (6th Cir.) cert. denied, 469 U.S. 1193 (1985).
 
 
 10
 The standard of review on appeal of a jury verdict is restricted to whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 311 (1979). Additionally, a jury may select from a number of reasonable interpretations of the evidence, and an appellate court "must view the evidence in the light most favorable to the government, and accept reasonable inferences and credibility choices by the fact-finder." United States v. Rosenthal, 793 F.2d 1214, 1225 (11th Cir.1986) (citations omitted).
 
 
 11
 In CCE cases, the government need only establish that the defendant was able to manage or coordinate the activities of five or more people. Additionally, Sec. 848 does not require personal contact to prove the elements of supervision, management and organization, nor does it require that the person charged be the only ring leader. United States v. Davis, 809 F.2d 1194, 1204 (6th Cir.1987). Section 848 was enacted to "reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." United States v. Amen, 831 F.2d 373, 381 (2nd Cir.1987) (quoting Garrett v. United States, 471 U.S. 773, 781 (1985)). Moreover, this court has previously held that:
 
 
 12
 [t]he relationship requirement in a Sec. 848 case is flexible. The defendant's relationship with the five other individuals need not exist at the same moment. There can exist separate, individual relations with the five persons. And, the five individuals need not act at the same time.
 
 
 13
 United States v. Sinito, 723 F.2d 1250, 1261 (6th Cir.1983) cert. denied, 469 U.S. 817 (1984) (citations omitted). This court is convinced that there was enough evidence to support the jury's guilty verdict on the CCE charge.
 
 
 14
 Munoz conceded that there was sufficient evidence of a position of management, supervision and organization over the two people, Sergio and Miquel, who worked for him. Therefore, the government only had to establish a similar relationship of "coordinating the activities" of at least three others. We find no error in the district court's conclusion that the government met this burden.
 
 
 15
 Between 1982 and 1986, Johnson bought one to two kilos of cocaine from Munoz every month. In addition, it was not uncommon for Munoz to "front" Johnson one kilo when he bought two. In Davis, this court found that by planning and paying for a couriers travel arrangements, and by providing the Netherlands contact with the funds to purchase heroin, Duane Davis had coordinated the couriers activities towards the goal of transporting heroin from the Netherlands. Davis, 809 F.2d at 1204. Similarly, Munoz' willingness to allow Johnson to buy cocaine "on account" and allowing him to run up a bill of $80,000 establishes that he coordinated Johnson's activities towards the goal of distributing cocaine in Flint. Johnson's organization would have been crippled but for Munoz' cooperation.
 
 
 16
 Similarly, there was sufficient evidence for a trier of fact to find that beyond a reasonable doubt Munoz coordinated the activities of Chico Polo (the middleman who received a commission for locating buyers), George Moorhatch (another distributor who had established an "account"); and Armando and Rubin (couriers). Although Munoz argues that he and Johnson were equals, that argument is rebutted by the evidence.
 
 
 17
 In conclusion, we find that the district court did not err by denying Munoz' motion for acquittal, as it was reasonable for the jury to find that Munoz coordinated sales and deliveries for Johnson's cocaine organization. This involved managing, supervising or coordinating the activities of Johnson, Chico-Polo, George Moorhatch, Armando, Rubin, and the two men Munoz admitted supervising.
 
 
 18
 Munoz also raises, for the first time on appeal, an objection to the jury instructions given at trial. The trial court instructed the jury that: "[o]ne who hires a foreman is responsible for organizing the individuals hired by the foreman to work as his crew." Munoz contends that this instruction unfairly suggested that he had hired Johnson and his Flint operation. This theory, he argues, was not supported by sufficient evidence. However, in light of the discussion above, there was sufficient evidence to support the theory that Munoz coordinated Johnson's activities in an effort to satisfy the goal of distributing Munoz' cocaine in Flint; and therefore he "hired" Johnson and his crew to realize that goal. Moreover, since Munoz failed to raise an objection at trial, we may only reverse if giving the instruction was plain error. United States v. Slone, 833 F.2d 595, 598 (6th Cir.1987); United States v. Mendez-Ortiz, 810 F.2d 76, 78 (6th Cir.) cert. denied, 107 S.Ct. 1384 (1987). We find that the trial judge did not commit plain error by giving the "foreman" instruction.
 
 III. AYDINIAN
 
 19
 Harout Aydinian raised two challenges to the jury instructions given by the trial judge. Aydinian challenged the court's refusal to charge the jury with the following requested instruction regarding his status as a government informant:
 
 
 20
 In this case, there has been evidence submitted that [d]efendant, Aydinian, was a Government informant. There can be no conspiracy between a Government informer who secretly intends to frustrate the conspiracy and other members of the conspiracy because it takes two to conspire and a government informer is not a true conspirator.
 
 
 21
 Although the requested jury instruction is factually correct, it implies that a government informant can never be a conspirator. However, it is true that where a co-conspirator is a government agent or where an informant acts at the direction of the government, that information can not be guilty of conspiracy. United States v. Lively, 803 F.2d 1124 (11th Cir.1986). These circumstances do not exist in this case. Aydinian still continued to purchase and distribute cocaine even after he began providing the FBI with information about Johnson and his operation. Aydinian merely selected the information he wanted to reveal to the FBI, carefully concealing his own involvement with Johnson. Accordingly, the requested jury instruction incorrectly described the situation involved in this case. Therefore, the district court properly refused to charge the jury as requested.
 
 
 22
 Aydinian's second objection challenged the instruction the trial judge gave regarding Aydinian's decision not to testify. Aydinian contends that by giving the following instruction the court erred by using "should" instead of "must".
 
 
 23
 The jury should remember the defendant has the right not to take the stand and testify. Therefore, the jury should not draw any adverse inferences with respect to a defendant merely because that defendant has chosen not to testify.
 
 
 24
 Aydinian's argument is merely one of semantics. A quick look at the dictionary reveals that the two words are synonyms and interchangeable. "Should past tense of shall; must; ought (used to indicate duty, proprietary, expediency)." Random House College Dictionary 1218 (rev. ed. 1980). In a similar case, the Ninth Circuit held that: "Any semantic difference between "may" and "shall" in the context of the standard instruction in such cases could not affect the outcome of a trial, and clearly had no adverse affect upon appellants in this case." United States v. Cervantes-Gonzalez, 472 F.2d 611, 612 (9th Cir.1973).
 
 
 25
 Moreover, during voir dire the judge instructed the jury panel that:
 
 
 26
 The defendant has a right not to testify. You are permitted no inference whatsoever if he exercises his right not to testify. You may not infer guilt nor innocence. You may not suggest it by virtue of the fact that the defendant chooses not to testify. It is a totally neutral factor.
 
 
 27
 When comparing the two instructions, it becomes clear that the words "should" and "must" are in fact synonyms, neither word carrying any more strength or validity then the other.
 
 
 28
 Even if this instruction was erroneous, the conviction could only be reversed if it was plain error, as Aydinian failed to raise this objection at trial. The plain error doctrine only permits reversal in "exceptional circumstances" where the error is so plain that the "trial judge and the prosecutor were derelict in countenancing it." United States v. Sloan, 833 F.2d 595, 598 (6th Cir.1987). Accordingly, it was not plain error for the district court to use "should" instead of "must" in its instruction.
 
 IV. BAILEY
 
 29
 Defendant Paul Bailey ("Bailey") argues that the government failed to present sufficient evidence to sustain a conviction for conspiracy to distribute cocaine. Bailey contends that, although he purchased cocaine from time to time in small amounts, he never sold cocaine to anyone, and knew of no waitresses who sold cocaine out of his bar. He admits to using cocaine constantly in 1984, spending most of his money on cocaine for himself and his wife.
 
 
 30
 However, at trial, the government presented several witnesses who testified that they either sold cocaine to Bailey on a regular basis in quantities of one-half ounce to two ounces, or that Bailey either gave or sold them cocaine which they then sold to others. The primary witness against Bailey was the manager at his bar, Nancy Smith. Smith testified that Bailey gave her packets of cocaine which were given to the waitresses and dancers to sell to the customers. Smith stated that the women received 10% commission while the remaining 90% was turned over to Bailey. For helping him with the packaging and processing of the cocaine at the paint factory, Smith received small quantities of cocaine.
 
 
 31
 Bailey contends that the jury could not properly convict him of conspiracy to distribute cocaine based on these facts; but he admitted giving cocaine to his wife and sons, thus conceding that he was guilty of distribution. To prove conspiracy in drug cases the government must establish that the defendant voluntarily and knowingly participated in the conspiracy. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). "Participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to circumstances." Id. (quoting United States v. Garcia, 655 F.2d 59, 62 (5th Cir.1981)). "The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt." Christian, 786 F.2d at 211 (quoting United States v. Batimana, 623 F.2d 1366, 1368 (9th Cir.) cert. denied, 449 U.S. 1038 (1980)).
 
 
 32
 On appeal, when considering the sufficiency of the evidence this court must determine whether: "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Christian, 786 F.2d at 211 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis supplied)). In this case, several witnesses, including Bailey testified that Bailey purchased cocaine from Mark Johnson and other distributors in Flint, and gave or sold cocaine to others. Bailey also volunteered to supply drug paraphenelia (washing solvents manufactured at his paint factory) to the Columbian suppliers. Accordingly, it is clear that Bailey participated in the conspiracy motivating this case. Bailey's conviction is therefore supported by sufficient evidence.
 
 
 33
 Bailey also argues that the trial court committed reversible error by allowing the government to introduce evidence that he threatened government witnesses. Several witnesses testified that they had been threatened by Bailey or others on his behalf, to discourage them from testifying against him in this case. At trial, this evidence was objected to on the grounds that it was irrelevant; however, on appeal, defense counsel argues that although relevant the danger of unfair prejudice substantially outweighed its probative value. FED.R.EVID. 403. We may only consider this claim under the plain error standard since Bailey's counsel did not raise a Rule 403 objection at trial. We find that it was not plain error to admit this evidence.
 
 
 34
 In his appeal, Bailey requests reversal of the conviction due to ineffective assistance of counsel; however, he fails to show how his attorney's deficient conduct prejudiced him as required by Strickland v. Washington, 466 U.S. 668 (1984). To prevail in an argument challenging the assistance of counsel, a defendant must:
 
 
 35
 First, ... show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 36
 Id. at 687. A careful review of the trial transcript reveals that Bailey's counsel was not deficient, and, even if he erred there is no proof that his performance prejudiced the defense. Moreover, Bailey testified at trial, thus giving the jury an opportunity to evaluate his credibility for themselves.
 
 
 37
 Bailey's final argument challenges the court's decision to admit the testimony of an experienced DEA agent. Called as an expert witness, DEA Agent Krentler's testimony undermined Bailey's defense that he purchased cocaine for his personal use and not for distribution. Bailey contends that even an experienced DEA agent may not testify as to how much cocaine can be ingested through the nose if that information is not part of his personal knowledge. However, this court has previously held that general experience may qualify a witness as an expert. See United States v. Barker, 553 F.2d 1013, 1024 (6th Cir.1977). In United States v. Lawson, 780 F.2d 535 (6th Cir.1985), we agreed with the trial court's decision to permit police officers to define certain words used in the transportation, receipt and disposal of stolen property. Id. at 542. Similarly, the trial court in this case did not err by permitting DEA Agent Krentler, to testify about the actual usage of cocaine as reported to him by the habitual users he had come in contact with during his sixteen years of experience as a drug enforcement officer.
 
 
 38
 Accordingly, for the foregoing reasons, the judgments of conviction are AFFIRMED.
 
 
 
 [1]
 Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right. FED.R.CRIM.P. 29