NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0037n.06

Case Nos. 21-5871/5872

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff - Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| MARQUIS ANTONIO TOMPKINS, | ) |
| Defendant - Appellant. | ) |
| | ) |
| | ) |
| | ) |

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

OPINION

Before: CLAY, GIBBONS, and McKEAGUE, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. A jury found Marquis Tompkins guilty of one count of conspiracy to distribute heroin and fentanyl, five counts of distributing those substances, and one count of possessing a firearm as a prohibited person. Tompkins challenges his convictions on several grounds, arguing that the evidence was insufficient, the gun and drug charges should have been tried separately, and the district court gave incomplete or erroneous instructions both before and during jury deliberations. Tompkins also challenges his within-Guidelines sentence and the revocation of his supervised release. Because Tompkins shows no reversible error affecting either his conviction or his sentence, we affirm.

I.

On five occasions in early 2020, Tompkins sold heroin or fentanyl to Justin Sampley. Tompkins was unaware that Sampley was working as a confidential informant for Kentucky law enforcement officers during this time, and that the five purchases were controlled buys. After the

last controlled buy, Sampley continued purchasing heroin from Tompkins "on [his] own" for both personal use and distribution to others. DE 119, Tr., Page ID 1033-34.

On August 23, 2020, Tompkins was among the victims wounded in an unrelated shooting at a mall. Because Tompkins was on federal supervised release at this time, law enforcement officers searched his car following the shooting. Officers found a loaded gun under the driver's seat.

A grand jury indicted Tompkins on one count of conspiracy to distribute heroin and fentanyl, five counts of distributing those substances based on the controlled buys, a sixth drug distribution count based on a sale to another person, and one count of possessing a firearm as a convicted felon. The government's evidence included the testimony of officers and Sampley as well as video and audio recordings of the controlled buys. At the close of the government's case, Tompkins moved for a directed verdict. The district court denied the motion.

During its deliberations, the jury asked the district court, "would Mr. Sampley be considered a co-conspirator" within the date range in which he made the five controlled buys, and "if he is not, how would the jury be instructed to determine" the conspiracy count. DE 121, Tr., Page ID 1344-45. Tompkins argued to the district court that the jury instructions already adequately addressed the topic. The district court responded "no" to whether Sampley would be considered a co-conspirator for those buys, and otherwise encouraged the jury to determine the conspiracy count by carefully considering all the evidence in the case and the jury instructions. *Id.* at Page ID 1349.

The jury also asked to review the video footage of the controlled buys. In response, the district court stated that for reasons of clarity this would necessitate viewing all the video footage in the case again, which the district court estimated would take approximately 3.5 hours. The jury

2

then declined to view the video footage again. The jury found Tompkins guilty on the conspiracy count, the five drug distribution counts for the controlled buys involving Sampley, and the gun possession count, but acquitted Tompkins on the sixth distribution count.

Tompkins moved for a new trial. As relevant here, he argued that the jury's verdict was against the manifest weight of the evidence and that the district court erred in its instructions to the jury during its deliberations. The district court denied Tompkins's motion.

At the sentencing hearing, the district court determined that Tompkins is a career offender under United States Sentencing Guidelines § 4B1.1. The district court calculated a total offense level of 34, criminal history category of VI, and advisory Guidelines range of 262 to 327 months' imprisonment. In doing so, the district court adopted the findings of the presentence investigation report prepared by the probation office, to which neither party objected. Tompkins requested a sentence within the Guidelines range. The district court sentenced Tompkins to (1) concurrent terms of 312 months' imprisonment on the drug conspiracy count and on each of the drug distribution counts; (2) 120 months' imprisonment on the gun count, to run concurrently with the concurrent 312-month sentences for the drug counts; (3) a supervised release violation sentence of 24 months, to run consecutively with the other sentences; and (4) six years of supervised release. Tompkins timely appealed, challenging the sufficiency of the evidence and alleging various trial and sentencing errors.

## II.

We review the denial of a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 de novo. *United States v. Osborne*, 886 F.3d 604, 607-08 (6th Cir. 2018) (citing *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010)). We affirm if "*any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original).

We review the denial of a motion for a new trial under Federal Rule of Criminal Procedure 31 for abuse of discretion. *United States v. Dupree*, 323 F.3d 480, 484 (6th Cir. 2003) (citing *United States v. Gaitan-Acevedo*, 148 F.3d 577, 589 (6th Cir. 1998)). Plain error review applies to arguments that the defendant failed to make in the district court. *See United States v. Williams*, 998 F.3d 716, 733 (6th Cir. 2021) (citing *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006)). A plain error is an "obvious or clear" error that "affected [the defendant's] substantial rights" and also "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 733-36 (1993)).

"In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Stewart*, 729 F.3d 517, 530 (6th Cir. 2013) (quoting *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010)). While an "improper jury instruction" to which a defendant failed to object at trial "will rarely justify reversal of a criminal conviction," "an omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law." *Id.* (quoting *United States v. Rayborn*, 491 F.3d 513, 521 (6th Cir. 2007)).

We review the substantive reasonableness of a defendant's sentence for abuse of discretion. *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022). Our review is "highly deferential" because "weighing sentencing factors 'is a matter of reasoned discretion, not math.'" *Id.* at 505 (quoting *Rayyan*, 885 F.3d at 442). It is particularly difficult for a defendant to prevail on a challenge to the substantive reasonableness of a sentence within the Sentencing Guidelines range

because we presume that such a sentence is reasonable. *United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022) (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), *overruled on other grounds by Rita v. United States*, 551 U.S. 338, 347 (2007)).

Finally, we review a district court's revocation of supervised release for abuse of discretion. *United States v. Kirby*, 418 F.3d 621, 625 (6th Cir. 2005) (citing *United States v. Webb*, 30 F.3d 687, 688 (6th Cir. 1994)).

III.

First, Tompkins challenges the sufficiency of evidence to support his drug convictions. The elements of drug conspiracy under 21 U.S.C. § 846 are "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Wettstain*, 618 F.3d 577, 584 (6th Cir. 2010) (citing *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999)). Here, Sampley testified that he frequently bought heroin from Tompkins. A rational jury could rely on that testimony to conclude that Tompkins intentionally participated in an agreement with Sampley to violate the drug laws.

Tompkins argues that Sampley's testimony is legally insufficient to sustain his conviction because Sampley was a government informant, and Sampley's "deal with the government did not end until he provided testimony at trial." CA6 R. 31, Corr. Appellant Br., at 25. It is true that "proof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction." *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir. 1984) (citing cases). Sampley, however, testified that he continued to purchase heroin from Tompkins "on [his] own" for both personal use and distribution to others during the period after the five controlled

buys.[1]  DE 119, Tr., Page ID 1034.  Thus, a rational jury could have convicted Tompkins of drug conspiracy based not on the five controlled buys, when Sampley was undisputedly working as a government informant, but on the subsequent period, during which Sampley explained that he was not.  Sufficient evidence supports Tompkins's conviction for drug conspiracy.

To the extent that Tompkins challenges the sufficiency of evidence to sustain his convictions on the five drug distribution counts, those convictions were also supported by sufficient evidence.  To challenge his drug distribution convictions, Tompkins relies entirely on an attack on Sampley's credibility.  Credibility challenges are not an appropriate basis for relief under Rule 29.  *See United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (citing cases).  Moreover, other evidence corroborated Sampley's testimony, including video and audio recordings of the controlled buys and law enforcement officers' testimony.  Sufficient evidence supports Tompkins's drug distribution convictions.

IV.

Tompkins also challenges the sufficiency of the evidence for his firearm conviction.  A conviction for possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g) requires proof that the defendant had a prior felony conviction, knew of his status as a felon, and knowingly possessed a firearm that had traveled in or affected interstate commerce.  *United States v. Brooks*, 987 F.3d 593, 601 (6th Cir. 2021) (citing *United States v. Conley*, 802 F. App'x 919, 922 (6th Cir. 2020) and *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019)).  Tompkins

---

[1] When a government informant does not act at the direction of the government and continues the criminal enterprise alone, the informant is not working as a government informant and can enter into a conspiracy.  *See United States v. Munoz*, 865 F.2d 1269 (Table), 1989 WL 2202, at *4 (6th Cir. 1989) (noting that government informant can be found guilty of a conspiracy where the informant continued to purchase and distribute drugs on his own even after he began providing the government with information).

challenges only the sufficiency of the government's evidence that he knowingly possessed the firearm at issue.

The officers' discovery of the gun under the driver's seat of Tompkins's car, which was parked at the mall where Tompkins had just been shot, supported the jury's reasonable inference that Tompkins knowingly possessed the firearm. The jury was likewise free to reject Tompkins's alternative theory that the gun might belong to a friend to whom Tompkins had lent his car, especially given Tompkins's sister's testimony that she didn't "think [Tompkins] would really just let people drive his vehicles." DE 120, Tr., Page ID 1243. Sufficient evidence supports Tompkins's conviction for possessing a gun as a felon.

V.

Tompkins next argues that the joinder of the drug and firearm charges was improper. Under Federal Rule of Criminal Procedure 8(a), "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." On appeal, the government fails to identify which of the three alternative prongs of Rule 8(a) made joinder permissible here, and therefore forfeits any argument that joinder was proper. *See* CA6 R. 37, Appellee Br., at 13; *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") Instead, the government argues that any error was harmless because Tompkins did not suffer prejudice from joinder of the gun and drug charges. Because Tompkins failed to object to joinder before trial, plain error review applies. *See United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015).

7

Under Federal Rule of Criminal Procedure 52(a), "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." In the misjoinder context, an error "affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449 (1986) (internal quotation marks omitted). Actual prejudice "is particularly unlikely 'where it would not have been difficult for the jury to compartmentalize and distinguish the evidence concerning the different offenses charged.'" *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007) (quoting *United States v. Chavis*, 296 F.3d 450, 462 (6th Cir. 2002)). A district court's appropriate jury instruction to consider the evidence separately as to each count may ameliorate any prejudice from misjoinder. *See id.* at 587-88. A jury's acquittal of a defendant on one or more counts also weighs against a finding of actual prejudice because it tends to confirm that the jury separately considered the evidence as to each count. *See id.* at 588 (collecting cases).

Here, it would not have been difficult for the jury to compartmentalize the evidence relating to the drug conspiracy and distribution counts, which concerned controlled buys and other drug purchases, from the evidence in support of the gun possession count, which concerned the presence of a loaded gun under the driver's seat of Tompkins's car. The district court also properly instructed the jury to consider each count separately. *Compare* DE 121, Tr., Page ID 1285, *with* Pattern Crim. Jury Instr. 6th Cir. 2.01A (2022). The jury's acquittal of Tompkins as to one of the drug distribution counts suggests that it did so.

Tompkins argues that the evidence concerning the mall shooting, which came in as res gestae for the gun possession count but which all parties agree was otherwise unconnected to Tompkins's conduct giving rise to any of the charges in this case, was prejudicial because it made

him look like a "bad, scary man." CA6 R. 31, Corr. Appellant Br., at 9. We reject that argument because no one ever suggested that Tompkins's status as a *victim* of a mall shooting was a reason to suspect him of any crimes. Instead, the trial testimony was that Tompkins "had no involvement in what happened out there" and was "just a victim" who was shot as "he was just walking by." DE 119, Tr., Page ID 985. Tompkins also suggests that the district court's jury instructions did not cure any prejudice from misjoinder, but he ignores that we have found substantially identical instructions adequate where there was no specific reason to fear prejudice. *See Cody*, 498 F.3d at 587-88. Joinder of the gun and drug charges was not plain error requiring a new trial.

VI.

Next, Tompkins makes five objections to the district court's jury instructions. Because Tompkins did not raise any of these objections in the district court, we review for plain error. *See Williams*, 998 F.3d at 733. Under this standard, we reject Tompkins's arguments.

First, Tompkins argues that the district court erred in failing to instruct the jury before deliberations that an agreement between a defendant and a government agent would not support a conspiracy conviction. When the principle that an agreement with a government informant cannot support a conspiracy conviction is important given the facts of a case, failure to instruct the jury accordingly can constitute reversible error. *See United States v. Nunez*, 889 F.2d 1564, 1568-70 (6th Cir. 1989). Here, the district court should have given a jury instruction on this issue before deliberations began, and the government does not attempt to excuse the omission. However, Tompkins fails to show prejudice resulting from the omission for two reasons. First, the prosecutor's closing argument specifically advised the jury that Sampley was not a co-conspirator when he engaged in the five controlled buys. Second, the jury asked the district court about Sampley's status while making the five controlled buys, and the district court correctly answered

9

that those transactions could not make Sampley a co-conspirator. Under the circumstances of this case, where the record indicates that the jury focused on the precise question at issue and received a legally correct answer after inquiring, Tompkins was not prejudiced by the initial omission of a pertinent instruction. *Cf. Nunez*, 889 F.2d at 1567, 1570 (reversible error on de novo review where district court provided no response to jury question about status of agreement with specific agent other than repeating general instructions that did not address topic); *see also United States v. Munoz*, 865 F.2d 1269 (Table), 1989 WL 2202, at *4 (6th Cir. 1989) (determining that district court did not commit plain error where it refused to give instruction regarding inability of government informants to enter into criminal conspiracies where the government informant continued to purchase and sell drugs on his own even after becoming an informant).[2]

Second, Tompkins argues that the district court should have provided a specific instruction about the credibility of a witness who testifies under grant of immunity or reduced criminal liability. The district court instructed the jury on the topic of informant witness credibility by giving Sixth Circuit Pattern Criminal Jury Instruction 7.06A, which addresses the credibility of an informant witness who receives consideration for testifying. Tompkins argues that the district court should also have given Instruction 7.07, which addresses the credibility of a witness who testifies under grant of immunity or reduced criminal liability. As an initial matter, it is not clear

---

[2] In his reply brief, Tompkins implies that he was prejudiced because of the risk that the jury would find a drug conspiracy based on transactions with Sampley after the controlled buys without finding that Sampley was not acting as a government informant during that time. Tompkins forfeited this argument by failing to make it in his initial appellate brief. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") The argument also would not succeed under the plain error standard. The prosecutor's closing framed the issue as whether Sampley "stop[ped] becoming an agent for the police" after the last controlled buy. DE 121, Tr., Page ID 1320. Given the prosecutor's argument, it is not "likely" that an appropriately instructed jury would have acquitted Tompkins on the conspiracy count such that Tompkins's conviction represents a "grave miscarriage of justice." *See Stewart*, 729 F.3d at 530.

that Instruction 7.07, which typically pertains to witnesses who have entered plea agreements before testifying, applies to either of the informant witnesses at issue here, as there was no evidence that either had done so. *See* Pattern Crim. Jury Instr. 6th Cir. 7.07 (2022) (Comm. Commentary). But even if Instruction 7.07 would have been appropriate, failure to give it was not plain error because Instruction 7.06A adequately cautioned the jury to consider the credibility of the informant witnesses in light of their arrangements with the government.

The instant case differs from *United States v. Griffin*, 382 F.2d 823 (6th Cir. 1967), on which Tompkins relies to argue that the district court's omission was reversible error. In *Griffin*, the district court gave no cautionary instruction at all regarding the credibility of an informant witness who was paid for his services. *See id.* at 828-29. Here, in contrast, the district court gave such an instruction, and Tompkins argues only for an additional related instruction. The district court's omission was not plain error.

Third, Tompkins challenges the district court's omission of a limiting instruction concerning evidence of a defendant's acts other than those charged in the indictment. But Tompkins fails to identify evidence of any specific acts that would necessitate such an instruction, instead referring generally to officers' testimony about the mall shooting and his probation officer's testimony. Tompkins's injury at the mall did not constitute an "act" by Tompkins, and the probation officer's testimony about Tompkins's prior felony established an element of the charged gun possession offense. *See United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022) (other-acts concerns not implicated where evidence establishes element of charged offense).

For the same reason, Tompkins cannot rely on *Evans v. Cowan*, 506 F.2d 1248 (6th Cir. 1974), where we held that "the obvious prejudice to defendant" resulting from evidence of prior convictions "could be tolerated only where the jury was admonished by the trial court not to use

the evidence of previous convictions in determining guilt or innocence on the primary charge." *Id.* at 1249. Here, the previous conviction was an element of the "primary charge" of felon-in-possession. *Cf. id.* To the extent that the jury might have considered evidence of Tompkins' prior felony in evaluating the charged drug offenses, the district court addressed that concern by instructing the jury to consider each charge separately. *See supra* at 8-9. The district court did not plainly err in omitting an other-acts instruction.

Fourth, Tompkins argues that the district court's inclusion of Sixth Circuit Pattern Criminal Jury Instruction 7.02A, which addresses a defendant's right not to testify, inappropriately commented on Tompkins's decision to exercise that right. In *Lakeside v. Oregon*, 435 U.S. 333 (1978), the Supreme Court advised that "[i]t may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection." *Id.* at 340. However, as Tompkins concedes, he did not object. In the same vein, the Committee Commentary to Instruction 7.02A, which states that "[w]hile it may be permissible to give this instruction over the defendant's objection, the better practice is not to give it unless it is requested by the defendant," does not help Tompkins because (1) he did not object; and (2) the commentary suggests that giving the instruction might have been "permissible" even if he had. Moreover, the fact that Tompkins did not request this instruction is of limited significance because he did not request *any* jury instructions. The district court did not plainly err in instructing the jury that Tompkins had a right not to testify.

Fifth, Tompkins argues that the district court's responses to the jury's questions during its deliberations require reversal. Separate from his argument concerning the district court's failure to instruct the jury before deliberations about the status of an agreement with a government agent, Tompkins also challenges the district court's failure to give such an instruction in response to the jury's question about Sampley's status during the period of the controlled buys. Instead of giving

a general instruction, the district court answered "no" to the jury's specific question "would Mr. Sampley be considered a co-conspirator" within the period of the five controlled buys. DE 121, Tr., Page ID 1344, 1349. For the same reasons discussed above, there was no prejudice to Tompkins here because the court directly answered the jury's specific question about Sampley. *See supra* at Page ID 11-12.

Tompkins's argument is also barred by the doctrine of invited error, which "refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit." *United States v. Howard*, 947 F.3d 936, 945 (6th Cir. 2020) (quoting *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993)). When discussing how to respond to the jury's question, Tompkins argued that "the jury instructions [were] sufficient in and of themselves" and did not "need[] any further clarification." DE 121, Tr., Page ID 1348. Thus, Tompkins not only failed to object to the district court's omission of an instruction about the status of an agreement with a government informant, but also affirmatively "invited or provoked" the court to give no such instruction in response to the jury's question. *See Howard*, 947 F.3d at 945.

Tompkins concedes that the doctrine of invited error applies but argues that a manifest injustice will result if we decline to review the issue. Because Tompkins identifies no specific reason that failure to consider his argument would result in a miscarriage of justice, and because Tompkins suffered no prejudice from the omission of a general instruction, we reject this argument. *Cf. United States v. Montgomery*, 998 F.3d 693, 699 (6th Cir. 2021) ("We have said, for example, that the interests of justice will typically favor reviewing an argument where the government and the defendant are equally at fault and the defendant claims a violation of his constitutional rights.").

Tompkins also challenges the district court's answer to the jury's request to rewatch the video footage of the controlled buys. However, he cites no authority to argue that the district court's response was legal error, nor does he explain what the district court should have told the jury instead. Tompkins thus fails to show "obvious" or "clear" error. *Williams*, 998 F.3d at 733. Tompkins also fails to show prejudice given that the jury had already seen the video footage and could have watched it again but chose not to do so.

In addition to his specific objections, Tompkins generally argues that the cumulative effect of the errors at his trial deprived him of his due process rights. We reject this argument because Tompkins has failed to show prejudice. *See United States v. Underwood*, 859 F.3d 386, 395 (6th Cir. 2017) ("To prevail under cumulative-error analysis, a defendant 'must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair.'") (quoting *United States v. Warman*, 578 F.3d 320, 349 n.4 (6th Cir. 2009)). We affirm Tompkins's convictions.

## VII.

Next, Tompkins challenges his sentence. Because Tompkins does not argue that the district court incorrectly calculated his Sentencing Guidelines range or otherwise procedurally erred, we construe his sentencing argument as a challenge to the substantive reasonableness of his sentence. *See generally Zabel*, 35 F.4th at 504. Tompkins fails to identify any factor that would overcome the presumptive reasonableness of his within-Guidelines sentence. *See Gardner*, 32 F.4th at 530. Instead, he contests the general rationale for applying the career offender guideline to defendants like him who committed their earlier offenses when they were significantly younger. Such policy arguments alone do not establish that a sentence is substantively unreasonable. *See United States*

*v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (district court not required to "examine the underlying bases for a Guideline before imposing a sentence").

Relatedly, Tompkins argues that he is not a violent person and that his past offenses supporting application of the career offender guideline were not violent. But a violent character is not a prerequisite for application of the guideline, and Tompkins does not argue that the district court erroneously based its sentence on a conclusion that Tompkins is violent.

In addition to its arguments in support of the substantive reasonableness of Tompkins's sentence, the government also argues that Tompkins's challenge to his sentence is barred by the doctrine of invited error because Tompkins specifically requested a within-Guidelines sentence. In support of its argument, the government cites two unpublished out-of-circuit cases in which a defendant asked for the precise term of imprisonment that he received. *See United States v. Bridges*, 817 F. App'x 606, 612 (10th Cir. 2020); *United States v. Pitts*, 599 F. App'x 374 (11th Cir. 2015). Here, Tompkins asked for a sentence within the Sentencing Guidelines range, but he did not ask for a precise number of months' imprisonment. We decline to decide whether the doctrine of invited error applies in a context like this, because Tompkins's sentence was substantively reasonable and therefore there was no error, invited or otherwise. We therefore affirm Tompkins's sentence.

## VIII.

Finally, Tompkins argues that any relief as to his convictions should also include vacatur of the district court's revocation of his supervised release. Because we affirm Tompkins's convictions, we also affirm the district court's revocation of his supervised release.

## IX.

We affirm.

15